**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE. NEW MEXICO

**IN THE UNITED STATES DISTRICT COURT**

APR 1 2 2006

**FOR THE DISTRICT OF NEW MEXICO**

MATTHEW J. DYKMAN

IN RE: THE MATTER OF                          CLERK
GANY MIKE BELLO, ESQ.                MISCELLANEOUS NO: 2006-06

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Respondent's Motion for Injunctive Relief, filed

March 22, 2006. The primary issue is whether the Court should provide the Respondent, Gany Mike

Bello, with more information before it proceeds with the show cause hearing. Because the Court

continues to be concerned about Mr. Bello's capability to practice in this District, the Court will deny

the motion for injunctive relief and will continue with this proceeding, but will grant Mr. Bello the

particularized notice that he requests, and will set the show cause hearing at a future date.

### FACTUAL BACKGROUND

To comply with Mr. Bello's request for all facts and allegations, including evidence and

records, supporting the determination that he lacks a basic understanding of the rules of practice,

abuses opposing counsel with specious charges and allegations, and lacks respect for the judicial

tribunal, the Court sets forth in detail its reasons for these determinations. The Court also cites to

the documents in the record by specific document number and, where appropriate, page and line.

The Court is also sending to Mr. Bello two tabbed notebooks with selected documents from both

cases. The Court will refer in this factual background to the tabs in those documents. The Court has

also highlighted the portions of those documents it is sending Mr. Bello to show him with precision

what the Court's concerns are.

A.     **Wheeler v. American Heritage Bank & Sellers.**

Wheeler v. American Heritage Bank & Sellers, CIV 04-271 WPJ/LFG began as a routine

consumer action against a financial institution alleging violations of the Truth in Lending Act, the Federal Credit Reporting Act, and the New Mexico Unfair Trade Practices Act, which is modeled after the Deceptive Trade Practices Act. See Plaintiff's Original Petition ¶ 1, at 1, filed March 11, 2004 (Doc. 1)(Tab 1). Mr. Bello represented the Plaintiff, Brennan Wheeler.

1.  Wheeler sought damages because of the Defendants' alleged conduct, which "result[ed] in humiliation, damaged credit, excessive payment and collection costs, severe emotional distress and mental anguish." Id. ¶ 4, at 2.

2.  Wheeler's portion of the Initial Pretrial Report ("IPTR") states that she was seeking "Actual damages, Compensatory damages, Consequential damages, Pains [sic] and suffering, emotional distress, loss of family consortium and Treble the [sic] damages, Attorneys fees and punitive damages." IPTR ¶ 6, at 3, filed June 24, 2004 (Doc. 22)(Tab 2).

3.  Shortly after the issuance of the Court's Initial Scheduling Order, which sets the deadlines for the parties' meet-and-confer, submission of the provisional discovery plan and the IPTR, Mr. Bello filed a paper entitled "Plaintiff's Update to the Court." Plaintiff's Update to the Court, filed April 27, 2004 (Doc. 6). The stated purpose of the "Update" was to alert the Court that Mr. Bello experienced difficulty in arranging a meeting with defense counsel. He threatened sanctions "against the Defendants individually and their attorney in his own capacity," id. ¶ 6, at 2, and accused the Defendants of "stonewalling and resistence," id. ¶ 3, at 1.

4.  The Honorable Lorenzo F. Garcia, Chief United States Magistrate Judge, believes that cases that begin with the "rattling of sabers" and threats of sanctions call for immediate judicial intervention. Accordingly, Judge Garcia, as the referral magistrate judge, immediately scheduled a conference call on April 30, 2004 with all counsel to ascertain the nature of the problem, to lessen the intensity, and to set an appropriate tone for the litigation.

5. Defense counsel advised that he was away from the office when Mr. Bello's calls were made and apologized for the delay in returning the calls. Chief Judge Garcia advised both attorneys that threats of sanctions and charges of misconduct rarely result in a cooperative approach to litigation, and requested that the parties cooperate with one another. Both counsel indicated they would cooperate with one another.

6. Following the April 30, 2004 conference call, Chief Judge Garcia entered an Order Striking Plaintiff's Update to the Court. See Doc. 7 (Tab 3). The order set out what occurred in the telephonic conference, advised that the purpose of the telephonic conference was to ensure that an appropriate tone and tenor were set, and provided notice that the "Update to the Court" was not an authorized pleading under the Federal Rules of Civil Procedure. Id. at 1. Chief Judge Garcia's order reminded the parties that, if they needed to bring matters to the Court's attention, other than routine scheduling matters, they should do so by way of formal motion, which affords the opposing party an opportunity to be heard. See id. Chief Judge Garcia expressed appreciation for the statements of counsel indicating that they intended to both be cooperative and courteous toward one another. See id. at 2.

7. In response to Chief Judge Garcia's order, on May 12, 2004, Mr. Bello filed "Plaintiff's Objection to Magistrate Judge's Jurisdiction and Motion to the Court to Reconsider and to Vacate Order to Strike." Doc. 8 (Tab 4). Mr. Bello asserted that Chief Judge Garcia's action was "evidence of bias, arbitrary and precipitous ruling, which are contrary to judicial expediency and judicial integrity . . . ." Id. at 1. He accused Chief Judge Garcia of being "arbitrary, heavy handed, biased and contrary to the principal of judicial expediency," and asserted that Chief Judge Garcia's statements in the order striking the update "were unfounded and precipitous at the least, and grossly misstated, heavy handed and clear evidence of bias against Plaintiff and her cause on its face." Id.

at 4.  Mr. Bello stated that his client had not consented to Chief Judge Garcia's involvement in the case.  See id. at 1, 5.  Mr. Bello concluded by demanding that "the magistrate judge refrain from any further actions or participation in the litigation of her case for the cause of justice, judicial expediency and to enhance judicial integrity . . . ."  Id. at 6.

8.  Because Mr. Bello's "Objection" included a motion to reconsider and a request to recuse, as well an objection to the ruling, Chief Judge Garcia responded to the motion to reconsider and request for recusal and, on May 14, 2004, issued a Memorandum Opinion and Order denying the motion to reconsider and to vacate.  See Doc. 9 (Tab 5).  Chief Judge Garcia reserved Mr. Bello's objection to his order for the presiding judge, the Honorable William J. Johnson, United States District Judge.  See id. at 1.

9.  Chief Judge Garcia's May 14, 2004 order advised Mr. Bello that his lawsuit was not a consent case where the parties' consent was necessary for magistrate involvement.  See id. at 2.  Chief Judge Garcia was serving as a referral judge on non-dispositive motions.  See id. at 2-3.  Chief Judge Garcia advised Mr. Bello: "When a magistrate judge is serving as the referral magistrate, the parties' consent is not necessary.  Thus, there simply exists no basis to reconsider the Court's order based on counsel's argument that Plaintiff did not consent to the undersigned magistrate."  Id. at 3.  The Court then denied Mr. Bello's request for recusal or removal based on allegations of bias or prejudice, finding that no cause existed under 28 U.S.C. § 144 or 28 U.S.C. § 455.  See id. at 3-6.

10.  Chief Judge Garcia conducted an initial scheduling conference under rule 16 of the Federal Rules of Civil Procedure on May 21, 2004.  See Clerk's Minutes, filed May 21, 2004 (Doc. 11).  The rule 16 conference was conducted telephonically and electronically recorded.  See Transcript of Hearing (Tab 6).  Because Mr. Bello was on a cell phone the quality of the phone transmission and the transcription is poor.

4

Chief Judge Garcia noted that Mr. Bello's IPTR was improper.  See id. at 9-11.  The entire first page of the IPTR was a recitation of complaints against opposing counsel.  The Court directed that a new IPTR in proper form be submitted.  See Discovery and Scheduling Order at 3-4, filed May 21, 2004 (Doc. 12) (Tab 7).

11.  At a rule 16 scheduling conference, Chief Judge Garcia asks the parties to provide an overview of their claims and defenses, and then inquires whether rule 26 disclosures were made, and if so, to discuss the disclosures.  Chief Judge Garcia's discussion concerning whether Mr. Bello made rule 26 disclosures commences on page 9, line 23 through line 25 and continues through page 14, line 22 of the Transcript of Hearing.  For example, on page 9, Chief Judge Garcia asked: "What information have you provided to opposing counsel, to Mr. Pool, as part of the disclosure obligations?"  Mr. Bello responded:

> Yes, your honor, I don't understand the question.  Are you suggesting that I['m] supposed to do the research for Mr. Pool as to what the allegations and the facts that control the allegations made in petition.

Chief Judge Garcia responded:

> Sir, I'm not suggesting that you do the research, I'm suggesting that you comply with initial disclosures under Rule 26.  Your obligations are to make a set of initial disclosures, including name, identification, address, and telephone number of the witnesses who have relevant information and on whose testimony you will rely.  Your second set of disclosures require you to disclose the documents on which you will rely in the prosecution of your case.  Your third set of disclosures require a calculation of damages.  These disclosures are to be made under federal law without opposing counsel making any request.  These are automatic disclosures.  They are to have been made within fourteen days of your meet and confer session, so let me go back and ask you again, what disclosures have you made to opposing counsel?

Transcript of Hearing at 10:1-19.  Chief Judge Garcia concluded that Mr. Bello was unaware of disclosure obligations and had not provided rule 26 disclosures.  See id. at 10:20-11:25.

12. Chief Judge Garcia advised Mr. Bello that disclosures were automatic and need not await formal requests:

> You are mistaken, sir. These initial disclosures must be made and they are not contingent on the Court doing the Rule 16 conference. You are mistaking formal discovery, which may not go forward unless the parties have agreed or until the Court has approved the parties' provisional discovery plan, with your initial disclosure obligation.

Id. at 11:7-13.

13. Chief Judge Garcia then inquired whether Wheeler was asserting claims for physical, mental or emotional injury. See id. at 15: 5-16:20. In these discussions, after learning that Wheeler was indeed making a claim for mental and emotional injury, Chief Judge Garcia explained the disclosure requirements under D.N.M.LR-Civ. 26.3(d) and gave Mr. Bello ten days within which to comply with the requirements of the district's local rule. See id.

14. Later in the conference, Chief Judge Garcia reviewed the attorneys' Provisional Discovery Plan and noted that the ten months of discovery requested were excessive in a fairly routine consumer lawsuit. Cases of this nature are usually assigned to a "standard" case management track, with 120 to 150 days allowed for discovery. In this case, Chief Judge Garcia limited discovery to 150 days. See id. at 20:9-21:5. Chief Judge Garcia's comments were: "Normally, we would assign a 120-day discovery schedule. I can increase it up to 150 days, if warranted, but it appears that there are very few witnesses. Mr. Bello, can you complete discovery within 120 days?" Id. at 20:12-15. Mr. Bello responded:

> Not that I'm aware of. And I will also reply to the fact that both parties conferred on the discovery plan. At this point, I don't - I haven't had any [inaudible] made to me as to the possible - the numbers of individuals or parties that might have knowledge [inaudible] at issue in my client's case, so . . . .

6

Id. at 20:16-21.  Chief Judge Garcia stated: "I take it you are objecting to 120 days.  I will then assign this to a 150-day track.  It just meets no criteria for an assignment beyond that.  The Court will assign this to a 150-day track."  Id. at 20:22-25.

15.  In accord with his statement, Chief Judge Garcia issued a Discovery and Scheduling Order assigning the case to a 150-day case management track.  See Discovery and Scheduling Order at 1-2.  Chief Judge Garcia's scheduling order stated in part:

> As previously indicated in the Courts Order Striking Update to the Court [Doc. 7], the Court requested cooperation between counsel and noted that the accusations, castigations and demand for sanctions that have now twice been submitted to the Court are improper, do not constitute effective advocacy, and tend to interfere with the cooperative spirit which should be fostered by counsel in civil litigation.  An attorney may be a zealous advocate on behalf of a client, but must always act within the bounds of propriety, ethics and professionalism.

Id. at 4.

16.  Chief Judge Garcia's scheduling order prompted another objection.  See Plaintiff's Objection to Magistrate Judge's Discovery and Scheduling Order, filed June 3, 2004 (Doc. 13)(Tab 8).  Mr. Bello accused Chief Judge Garcia of "prejudicial interference" and again asserted that, by virtue of his client's lack of consent to a magistrate judge's participation, Chief Judge Garcia's actions were void.  Id. at 1, 5.  Mr. Bello contended that assigning a 150-day schedule constitutes a violation of the rules of procedure.  See id. at 6.  Finally, Mr. Bello accused Chief Judge Garcia of "an unusual and rather heavy handed, one sided and conclusory approach."  Id. at 3.

17.  Judge Johnson overruled Mr. Bello's earlier objections concerning the Order to Strike Update to the Court.  See Order Denying Plaintiff's Objections to Magistrate Judge's Prior Rulings at 2, filed June 3, 2004 (Doc. 14) (Tab 9).  Further, Judge Johnson outlined the case assignment process and advised: "Thus, the fact that Plaintiff and her counsel do not consent to Judge Garcia

serving as the referral magistrate is of no legal consequence or concern to the Court." Id. at 2.

    18.  Judge Johnson warned Mr. Bello of his conduct:

> Finally, the Court will not dignify Plaintiff's assertions of bias and prejudice against Judge Garcia with a response other than to state that Plaintiff's assertions are totally devoid of merit.  Plaintiff's counsel is hereby warned that if he persists in the filing of frivolous pleadings and motions that do nothing more than clutter the record and waste the Court's time, then Plaintiff's counsel may find himself confronting the prospect of having court-ordered sanctions imposed.

Id. at 3.

    19.  Mr. Bello failed to submit a revised consolidated IPTR in proper form within the 10-day time limit that Chief Judge Garcia imposed.  See Transcript of Hearing at 11:22-25.  Thus, on June 14, 2004, Chief Judge Garcia issued an Order to Show Cause.  See Doc. 15 (Tab 10).  Chief Judge Garcia directed Mr. Bello to show cause why the Court should not impose sanctions as a result of his failure to comply with the Court's order.  See id. at 1-2.

    20.  In the interim, Judge Johnson ruled on Mr. Bello's second objections to the magistrate judge's Discovery and Scheduling Order.  See Memorandum Opinion and Order Overruling Plaintiff's Objections to Magistrate Judge's Discovery and Scheduling Order (Doc. 16) (Tab 11).  Judge Johnson clarified the authority of a magistrate judge, and warned Mr. Bello of the "language and tone" used in his pleadings.  Id. at 4-5.  Judge Johnson stated:

> All judges of this Court are entitled to respect, and the failure to show the proper respect and deference to one judge is a failure to show respect to the Court as a whole.
>
> The tone of Plaintiff's Objection evidences a grievous and intolerable lack of respect and deference for Judge Garcia and, by extension, the entire federal bench.  Such will not be countenanced and in the future shall result in appropriate sanctions.

Id. at 5.

Judge Johnson sustained Chief Judge Garcia's prior ruling refusing to recuse and stated that Wheeler had not demonstrated grounds for his recusal under 28 U.S.C. § 144 or 28 U.S.C. § 455. See id. at 8. Judge Johnson overruled all of Mr. Bello's objections. See id. at 1, 8.

21. Mr. Bello submitted a revised IPTR, and, accordingly, Chief Judge Garcia quashed the order to show cause and vacated the hearing set for June 29, 2004. See Order Quashing Order to Show Cause and Vacating Hearing, filed June 18, 2004 (Doc. 19).

22. On June 30, 2004, the Defendants filed a motion to compel and requested an order to show cause, arguing that Mr. Bello failed to comply with initial disclosure requirements. See Motion to Compel and for Order to Show to Cause (Doc. 24). In particular, the Defendants alleged that Mr. Bello failed to comply with the requirements that Wheeler provide information mandated under D.N.M.LR-Civ. 26 in that she had not provided information on healthcare providers nor submitted signed releases. See id. ¶¶ 5, 6, at 1-2. She had not responded to the Defendants' informal attempts to compel production. See id.

23. Chief Judge Garcia issued a new Order to Show Cause on July 2, 2004. See Doc. 25 (Tab 12). In his order, Chief Judge Garcia directed both Wheeler and Mr. Bello to appear to show cause why the Court should not enter rule 16 sanctions, including dismissal of the case with prejudice, as a result of non-compliance with the district's local rules, specifically, D.N.M.LR-Civ. 26, and with the express directive that Chief Judge Garcia gave at the rule 16 conference. See id. at 1-2.

24. In response to Chief Judge Garcia's Order to Show Cause, Mr. Bello filed a response contending that Wheeler was not required to make mandatory disclosures as her case was not based on "physical or mental medical conditions," and that requiring disclosures would have a "chilling effect on consumer's right to pursue remedies . . . ." Plaintiff's Response to Order to Show Cause,

filed July 16, 2004 ¶ 8, at 3 (Doc. 27).

25. Chief Judge Garcia conducted a show cause hearing on July 26, 2004. <u>See</u> Transcript at 11:20-24:21 (Tab 13)(taken July 26, 2004). Chief Judge Garcia advised Mr. Bello what disclosures were necessary and learned that they had not been made. <u>See id.</u> Although the pleadings and the IPTR indicated that Wheeler was making claims for severe emotional distress, injury, humiliation and loss of consortium, Mr. Bello contended that the emotional harm contemplated by federal statutes was insufficient to trigger the local rule's disclosure requirements. <u>See id.</u> While stating that he would not assert those claims, he also sought to reserve the right to argue for emotional damages. <u>See id.</u>

26. After consideration of the parties' positions, Chief Judge Garcia issued a Memorandum Opinion and Order directing compliance with discovery obligations and imposing sanctions. <u>See</u> Memorandum Opinion and Order Directing Compliance with Discovery Obligations and Imposing Sanctions, filed August 17, 2004 (Doc. 34) (Tab 14). Chief Judge Garcia determined that Mr. Bello's conduct was sanctionable, imposed the sanction of attorney fees that the Defendants incurred in their effort to secure compliance with disclosure requirements, and directed that Wheeler fully comply with D.N.M.LR-Civ. 26.3(d) within ten days, as well as make all other disclosures under rule 26 within the same ten-day period. <u>See id.</u> at 4-8. Chief Judge Garcia's order concluded: "Failure to comply with this Court's explicit directive can result in imposition of additional sanctions, including dismissal of Ms. Wheeler's case with prejudice. <u>Ehrenhaus v. Reynolds</u>, 965 F.2d 916, 920 (10th Cir. 1992)." <u>Id.</u> at 8.

27. On September 1, 2004, Mr. Bello filed an objection to the Memorandum Opinion and Order directing compliance with discovery obligations and imposing sanctions. <u>See</u> Plaintiff's Motion and Objections to Vacate Order Directing Compliance with Discovery Obligations and

Imposing Sanctions (Doc. 36).  He did not seek to stay Magistrate Judge Garcia's order.

28.  On September 2, 2004, the Defendants filed a second Motion for Contempt and For Order to Show Cause.  See Doc. 37.  In their motion, the Defendants stated that, notwithstanding Chief Judge Garcia's August 17, 2004 Memorandum Opinion and Order directing compliance with discovery obligations and imposing sanctions, Mr. Bello had not complied.  See id. at 1-2.  The Defendants requested a hearing.  See Request for Setting, filed September 7, 2004 (Doc. 38).

29.  On September 8, 2004, Chief Judge Garcia issued his Third Order to Show Cause.  See Doc. 39 (Tab 15).  In the order, Chief Judge Garcia outlined the requirements under D.N.M.LR-Civ. 26.3(d), as well as case law authorizing discovery of the identical information contemplated by the district's local rule.  See id. at 1-4.

30.  Chief Judge Garcia set the show cause hearing for October 1, 2004 at the courthouse in Roswell, New Mexico.  See id. at 4.  The location for the setting was to reduce the travel costs for Mr. Bello and defense counsel.

31.  On September 17, 2004, Mr. Bello sought to appeal Chief Judge Garcia's August 17, 2004 discovery order to the Tenth Circuit Court of Appeals.  See Plaintiff's Notice of Appeal to the Tenth Circuit Court of Appeals (Doc. 41).  Because of the filing of the Notice of Appeal, on September 23, 2004, Chief Judge Garcia entered an Order Clarifying Jurisdiction and Show Cause Hearing, reaffirming that the show cause hearing would proceed.  See Doc. 44 (Tab 16).  Chief Judge Garcia noted that, while filing a notice of appeal generally divests the trial court of jurisdiction, he determined that this notice of appeal was "'manifestly deficient' and, the court may therefore, 'ignore it and proceed with the case.'"  Id. at 4 (quoting Arthur Andersen & Co. v. Finesilver, 546 F.2d 338, 341 (10th Cir. 1976)).

32.  Chief Judge Garcia stated that an appeal from a magistrate judge's discovery order

should be presented to the district judge to whom the case is assigned.  See id.  Chief Judge Garcia

concluded that a ruling on a discovery order is not a "final decision of a district court" within the

meaning of 28 U.S.C. § 1291, and, thus, an appeal from a discovery order is outside the Court of

Appeals' jurisdiction.  See id. at 2-3.  As the proposed appeal to the Circuit pertained to a discovery

and sanction ruling, Chief Judge Garcia concluded the appeal should properly go to the district judge,

not to the Court of Appeals.  See id.

   The United States Court of Appeals for the Tenth Circuit has held that a sanction order

against an attorney is not a final decision for purposes of § 1291 appeals when the underlying

controversy remains unsolved.  It is not an appealable order under the collateral-order doctrine of

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S. Ct. 1221 (1949).  See Howard v. Mail-

Well Envelope Co., 90 F.3d 433, 435-36 (10th Cir. 1996).

   33.  Chief Judge Garcia concluded that Wheeler's Notice of Appeal in this case was

"manifestly deficient" and opted to ignore it and to proceed with the show cause hearing.  The order

advised Mr. Bello that the show cause hearing set for October 1, 2004 would proceed as scheduled.

See Order Clarifying Jurisdiction and Show Cause Hearing at 4.

   34.  On September 21, 2004, Mr. Bello filed a "Request for Disclosure" demanding that

Chief Judge Garcia disclose "his interests or affiliation with past and present Directors, attorneys,

agents or law firms of the Defendant, American Heritage Bank."  Plaintiff's Request for Disclosure

Under 28 U.S.C. § 455 to the Court at 1 (Doc. 42) (Tab 17).  He also requested disclosures "upon

self-examination and of others of affinity with the judge, concerning financial interests in the subject

matter, the Defendant American Heritage Bank and or the outcome of the controversy."  Id.

   35.  In response to the demand to disclose relations with the Defendants, Chief Judge Garcia

entered an Order indicating that the Court previously entered a Memorandum Opinion denying Mr.

Bello's request for disqualification and that no circumstances had changed since the filing of that memorandum that would warrant recusal. <u>See</u> Order on Plaintiff's Request for Disclosure Under 28 U.S.C. § 455, filed September 28, 2004 (Doc. 45).

36.   On September 30, 2004, Mr. Bello filed a new motion to recuse or to disqualify. <u>See</u> Plaintiff's Motion to Recuse Together with Certificate of Good Faith (Doc. 46) (Tab 18).   In the motion, Mr. Bello argues:

> [T]hat the Chief Magistrate Judge had demonstrated . . . bias against her causes and partiality and interest for the Defendants and their interest; and that the judge had interjected and entangled himself with the positions and interest of the Defendants and he is deeply and unfairly commingled himself to the Defendants [sic] causes and outcome of the proceedings; that he had concealed or refused to provide information concerning his connections or commingling with Defendants, their attorneys, their directors and shareholders past or present.

<u>Id.</u> at 1.   Mr. Bello's argued that Chief Judge Garcia exercised "unlawful jurisdiction" and stated:

> Judge Garcia's impartiality is reasonably questioned under the facts and record of this case and the partiality and impropriety of the judge together with entanglement with Defendants and their interest and extra judicial sources of information introduced into the case are grounds for disqualification of the judge. Including concealment of personal knowledge of disputed evidentiary facts and or interest that could be substantially affected by the outcome.

<u>Id.</u> at 5.

37.   Neither Mr. Bello nor his client, Wheeler, appeared at the show cause hearing on October 1, 2004. Mr. Bello failed to respond to the Defendants' Motion for Contempt and For Order to Show Cause.   The failure to file a response in opposition constitutes consent to grant the motion. <u>See</u> D.N.M.LR-Civ. 7.1(b).

38.   Notwithstanding Wheeler and Mr. Bello's absence, Chief Judge Garcia proceeded with the hearing and took evidence on each of the five <u>Ehrenhaus v. Reynolds</u> factors. The transcript of

proceedings for the October 1, 2004 hearing is available in the court record.

39. On October 6, 2004, Chief Judge Garcia issued a Memorandum Opinion Recommending Dismissal With Prejudice. See Doc. 49 (Tab 19). Chief Judge Garcia's Memorandum Opinion sets out the chronology of the case and key rulings and also includes an Ehrenhaus v. Reynolds analysis. See id. at 4-8. Chief Judge Garcia recommended that the trial judge enter an order dismissing Wheeler's lawsuit with prejudice as a discovery sanction, finding authorization in the Tenth Circuit's recent decision in Ashby v. McKenna, No. 03-1464, 2004 WL 2106540 (10th Cir. Sept. 22, 2004). See id. at 8.

40. On October 29, 2004, Judge Johnson entered an order accepting Chief Judge Garcia's recommendations. See Order Adopting Magistrate Judge's Recommended Disposition and Dismissing Case (Doc. 53) (Tab 20). Judge Johnson noted that the Notice of Appeal was a nullity, as it attempted to appeal from a non-appealable discovery sanctions order, and further noted that the Court had rejected arguments about lack of a magistrate's jurisdiction on three prior occasions. See id. at 1-2. Judge Johnson concluded that Wheeler failed to comply with the district's local rules as well as rule 26 of the Federal Rules of Civil Procedure, and that the Tenth Circuit previously determined that the failure to produce disclosures could result in dismissal of the plaintiff's case. See id. at 3 (citing Ashby v. McKenna, 2004 WL 2106540. Judge Johnson ultimately found good cause to accept Chief Judge Garcia's recommendation, and Judge Johnson dismissed the case with prejudice on October 29, 2004. See Order Adopting Magistrate Judge's Recommended Disposition and Dismissing Case at 3-4.

**B. Drain v. Wells Fargo Bank.**

This case, Drain v. Wells Fargo Bank et al., CIV 04-399 MV/KBM, began on April 12, 2004, as a consumer-related lawsuit under state and federal consumer protection statutes. See Plaintiff's

Original Petition (Doc. 1). It was originally assigned to the Honorable Leslie C. Smith, United States Magistrate Judge, as the proposed trial judge and to the Honorable Karen B. Molzen, United States Magistrate Judge, as the referral judge. Mr. Bello represents the Plaintiffs.

1.  On May 24, 2004, Defendants Fairbanks Capital Corp. ("Fairbanks") and Wells Fargo Bank ("Wells Fargo") filed a motion for a more definite statement.  <u>See</u> Wells Fargo's and Fairbank's Motion with Consolidated Brief for a More Definite Statement (Doc. 6).  The motion contended that the Plaintiffs were designated as James Drain and Rachel Drain "et al.," but no information in the Plaintiff's Original Petition (Complaint) indicated the identity of the "et al." plaintiffs. <u>See</u> <u>id.</u> ¶ 1, at 2.  Additionally, there was confusion concerning multiple defendants and which defendant was alleged to have engaged in certain activities.  <u>See</u> <u>generally</u> Wells Fargo's and Fairbank's Motion with Consolidated Brief for a More Definite Statement.   Co-Defendant, Accredited Home Lenders, Inc. ("AHL"), filed a similar motion.  <u>See</u> Defendant Accredited Home Lenders Inc.'s Motion and Brief for More Definite Statement, filed May 25, 3004 (Doc. 7).

2.  Mr. Bello filed a response in opposition. <u>See</u> Plaintiff's Response to Defendant's Motion for a More Definite Statement, filed June 15, 2004 (Doc. 8).  On June 16, 2004, Judge Smith granted the Defendants' motions for a more definite statement and directed that Mr. Bello file an amended complaint. <u>See</u> Order (Doc. 10).

3.  On July 7, 2004, Mr. Bello filed a First Amended Complaint (Doc. 11) asserting violations of federal and state consumer laws.  In addition to statutory damages, Mr. Bello sought damages as follows:

> "3. Plaintiffs, their persons and their family including their children have suffered emotional distress, pain and sufferings [sic] and mental anguish as a result of Defendants [sic] actions.  Plaintiffs have suffered damages, pecuniary, emotional distress, depression, drastic and severe weight loss, loss of consortium and goodwill . . . ."

Id. at 8 (Tab 1).

4.  The "drastic and severe" weight loss allegations, and allegations of emotional distress, mental anguish, and depression, all place physical and mental conditions at issue.

5.  Shortly after the filing of the amended complaint, AHL filed a motion to dismiss or, alternatively, for a more definite statement. See Defendant Accredited Home Lenders, Inc.'s Motion with Consolidated Brief to Dismiss for Failure to Comply with the Court's Order Entered on June 16, 2004; or in the Alternative, Motion for a More Definite Statement, filed July 22, 2004 (Doc. 13).

6.  On the same date, July 22, 2004, Fairbanks and Wells Fargo also filed a motion and memorandum to dismiss. See Wells Fargo's & Fairbanks' Motion to Dismiss (Doc. 14); Wells Fargo's & Fairbanks' Memorandum Brief in Support of Their Motion to Dismiss (Doc. 15). Up to this point, nothing unusual was apparent in the parties' advocacy. No personal attacks had been made by one side to another.

7.  On August 13, 2004, Mr. Bello filed his response and objections to Fairbanks' and Wells Fargo's motion to dismiss. See Plaintiff's Responses and Objections to Defendant's Wells Fargo & Fairbanks Motion to Dismiss (Doc. 16) (Tab 2). This pleading was the first document in which there was a shift of focus from the merits of the litigation to an attack on counsel. Mr. Bello wrote: "Plaintiffs strongly object to Defendants [sic] delay tactics, redundant argument and intentional misstatement of legal arguments and the misinterpretation of the directives in a Court's order." Id. at 1. The Plaintiffs accused the Defendants of improper misrepresentations and of being "less than truthful." Id. at 3.

8.  On September 10, 2004, AHL filed its answer, as well as its notice of consent to proceed before Judge Smith. See Defendant's Answer to Plaintiffs' First Amended Original Petition (Doc.

27); Consent to Proceed Before A U.S. Magistrate Judge (Doc. 25). Fairbanks and Wells Fargo filed an answer and counterclaim on September 10, 2004. See Wells Fargo's and Fairbanks' Answer and Defenses to Plaintiffs' First Amended Original Petition and Counterclaim by Wells Fargo and Fairbanks for Foreclosure of Mortgage (Doc. 24.). Fairbanks and Wells Fargo also consented to proceed before a Magistrate Judge. See Consent to Proceed Before a U.S. Magistrate Judge, filed September 10, 2004 (Doc. 27). The Plaintiffs did not consent to Judge Smith serving as the trial judge. Therefore, the case was reassigned from Judge Smith to the Honorable Martha Vazquez, Chief District Judge. See Minute Order, filed September 16, 2004 (Doc. 28).

9. On September 28, 2004, Judge Molzen, the referral magistrate judge, issued an Initial Scheduling Order setting out time limits for the meet and confer, and for submission of a Provisional Discovery Plan and Initial Pretrial Report. See Doc. 29.

10. On October 6, 2004, Mr. Bello filed a request for default against Defendant Basmajian T. Doyle ("Basmajian"). See Plaintiffs Request with Affidavit to the Court for Entry of Default Against Defendant Basmajian T. Doyle (Doc. 31). The Clerk of the Court, however, declined to enter default, as Mr. Bello did not submit proof of service on Basmajian. Mr. Bello submitted his own affidavit, stating only that Basmajian had been served. There were no details as to the time, place, or manner of service. See id. ¶ 4, at 3.

11. On October 13, 2004, Fairbanks and Wells Fargo requested an entry of default against the Drains because the Drains had not answered their counterclaims. See Wells Fargo and Fairbanks' Request for Entry of Default (Doc. 32). The Clerk entered a default on the counterclaims. See Clerk's Entry of Default (Doc. 39).

12. On October 15, 2004, Basmajian filed a motion and memorandum to dismiss, arguing that Mr. Bello had improperly sought to effect service of process in a manner that rule 4 of the

Federal Rules of Civil Procedure does not authorize. <u>See</u> Basmajian's Motion to Dismiss (Doc. 35);

Basmajian's Memorandum Brief in Support of his Motion to Dismiss (Doc. 36).

13. On November 10, 2004, Mr. Bello filed a response in opposition to Basmajian's motion

to dismiss arguing that Basmajian had been properly served, and contending that statements to the

contrary were "frivolous, unfounded and groundless."  Plaintiff's Responses and Objections to

Basmajian T. Doyle Motion to Dismiss at 1.  He also argued that the Court should bar the

Defendants' attorneys, Miller and Stratvert, P.A., from representing Basmajian. <u>See id.</u>

14. On December 6, 2004, Mr. Bello filed a motion to set aside the default judgment on

Fairbanks' and Wells Fargo's counterclaims. <u>See</u> Plaintiff's Motion to Set Aside Entry of Default

for Defendants Wells Fargo and Fairbanks on Their Counter Claims (Doc. 50) (Tab 3).  As part of

his argument, Mr. Bello stated that, although no answer was necessary, one would be filed.  He

stated:

> [F]or abundance of caution Plaintiffs file their Answers . . . after
> considering the obvious issue of partiality and bias against Plaintiffs
> [sic] causes and persons in view of the facts and evidences in the
> record of this case. . . . such as, where enforcement of Plaintiffs [sic]
> rights have been delayed, denied or ignored without cause
> continuously. For example, their request for entry of Default against
> Defendant, Basmajian has not been entered, up till now. It was filed
> twice, together with their Motion for Default . . . .  Whereas,
> Defendants [sic] request for entry of default though, unlawful and
> improperly filed and supported with bogus and altered affidavit, it
> was entered soon after the request for entry was filed.

<u>Id.</u> at 2.  Mr. Bello contended that the Court was biased and stated: "[I]t appears that there may be

bias against their claims and their persons and undue preference and partiality for the Defendants."

<u>Id.</u>

15. On December 14, 2004, Judge Molzen commenced the rule 16 scheduling conference.

<u>See</u> Amended Clerk's Minutes, filed December 15, 2004 (Doc. 54) (Tab 4).  Judge Molzen

scheduled the hearing for 1:30 p.m. See id. Defense counsel were present, but Mr. Bello was not.

See id. Judge Molzen recessed the scheduling conference at 2:00 p.m., and at 2:14 p.m., Mr. Bello

arrived forty-five minutes late. See id.

16.   Mr. Bello did not submit a completed IPTR, as Judge Molzen's scheduling order

required. See Initial Scheduling Order at 1-2 (Doc. 29). In the Initial Pretrial Report, Judge Molzen

noted: "Parties were unable to agree on a proposed IPTR or PDP. This is my attempt to consolidate

the deadlines and essential information . . . ." Initial Pretrial Report at 7, filed February 1, 2005

(Doc. 65).

17. On January 14, 2005, Chief Judge Vazquez issued a Memorandum Opinion and Order,

granting Basmajian's motion to dismiss for failure to serve in accord with the requirements of federal

law. See Memorandum Opinion and Order (Doc. 59). Chief Judge Vazquez' Memorandum Opinion

noted that Mr. Bello failed to timely respond to the motion and that the Drains failed to properly

effectuate service on Basmajian. See id. at 1-2. Chief Judge Vazquez concluded that the Drains

improperly attempted service by way of mail. See id. at 2.

18.   Because the Drains were making claims for physical, mental and emotional injury, the

district's local rule 26.3(d) imposed automatic disclosure requirements. See D.N.M.LR-Civ. 26.3(d).

19.   On January 14, 2005, AHL filed a motion to compel required initial disclosures. See

Motion to Compel (Doc. 60). Mr. Bello filed a Response and Objections to the Motion to Compel

contending that a rule 35 examination was not warranted. See Plaintiffs Response and Objections

to Defendant Accredited Home Lenders Motion to Compel Medical History Disclosures Under Local

Rule D.N.M.LR.-Civ 26.3(d). AHL had not, however, requested a rule 35 examination, but

requested that the Drains comply with mandatory disclosure obligations under the district's local

rules, as the Drains had alleged physical, mental and emotional injury as damages.

20.   On February 11, 2005, Fairbanks and Wells Fargo filed a motion to compel the Plaintiffs' mandatory rule 26 disclosures.   See Fairbanks' and Wells Fargo's Motion to Compel Plaintiffs' Initial Disclosures (Doc. 73).   Their motion sought the same relief that co-Defendant AHL requested.   See id.   The Defendants recited that the Drains failed to make mandatory initial disclosures under the district's local rule and failed to respond to informal inquiries concerning those disclosures.   See id.

21.   On February 14, 2005, Fairbanks and Wells Fargo filed a Motion to Require Only Written Communications Between Opposing Counsel.   See Doc. 75 (Tab 6).   The motion was unusual in that it asked the Court to require counsel to communicate with one another only in writing.   See id. at 1.   The basis of the Defendants' motion was that their discussions with Mr. Bello were lengthy and unproductive, and attempts to resolve even routine or clerical matters would evolve into protracted discussions on the merits of the case.   See id.   The Defendants expressed concern that Mr. Bello accused them of misrepresentation and taint, and, therefore, they wished all communications to be written.   See id. at 1-2.

22.   On February 28, 2005, Chief Judge Vazquez entered an Order of Reference directing Judge Molzen to make a report and recommendation on pending motions.   See Order of Reference (Doc. 78).   Mr. Bello filed an objection to Chief Judge Vazquez's Order of Reference.   See Plaintiffs Response and Objections to District Judge Vasquez Order of Reference Pursuant to 28 U.S.C. § 636, filed March 10, 2005 (Doc. 90).

23.   On March 2, 2005, Judge Molzen issued a Memorandum Opinion and Order on the Defendants' motion to compel disclosures under rule 26.3(d).   See Memorandum Opinion and Order Granting Motion to Compel (Doc. 81) (Tab 6).   The memorandum included an analytical examination of the district's local rule and rejected Mr. Bello's claims that disclosure of information

was not required. See id. at 2-5. Judge Molzen noted that Mr. Bello's non-compliance in the earlier

Wheeler v. American Heritage case, which raised the same issue, resulted in dismissal with prejudice

of the Plaintiff's claim and said:

> I mention the Wheeler case only in an attempt to avoid the same
> result in this litigation. To the extent that Plaintiffs may have made
> the objections to preserve their position on appeal, that has been
> accomplished. Now is the time for Plaintiffs and their attorney to
> comply with this Court's directive to provide what it has determined
> to be the required initial disclosures. Plaintiffs are cautioned that any
> further failure to fully comply with the orders set forth below will
> result in an order to show cause.

Id. at 4-5.

24. On March 4, 2005, AHL joined with the co-Defendants' motion to require only written

communication between AHL and Mr. Bello. See Defendant Accredited Home Lenders, Inc's

Motion to Require Only Written Communication Between Opposing Counsel (Doc. 83).

25. On March 8, 2005, Fairbanks filed a motion to compel Mr. Bello to respond to

discovery. See Fairbanks' Motion to Compel Responses to First Request for Production to James

A. Drain and Answers to First Interrogatories to James A. Drain (Doc. 86). The motion recited that

discovery was served, that neither the Court nor counsel had authorized an extension, and that Mr.

Bello failed to respond to written discovery. See id.

26. Similarly, on March 8, 2005, Fairbanks filed a motion to deem admitted its first request

for admissions because Mr. Bello failed to respond to written discovery within the time permitted

by law. See Fairbank's Motion to Deem Admitted Its First Requests For Admission to James Drain

(Doc. 87).

27. On March 9, 2005, Judge Molzen issued a Memorandum Opinion and Order granting

the Defendants' motion that all future communications between the Defendants and Mr. Bello be

in writing.  See Memorandum Opinion and Order (Doc. 88) (Tab 7).  Judge Molzen stated:

> In the normal course of litigation, I would be loathe to even consider a request such as that presented in the motions.  I have always encouraged attorneys to begin and continue oral communications, not only by telephone but in person.  Such oral discussions are usually more cost effective, a better use of resources and often result in the resolution of disputes without court intervention.
>
> Here, however, I believe that oral communications are actually interfering with the orderly processing of this case to a degree I've never before encountered.  At virtually every hearing and conference, as well as in most if not all of the pleadings, Plaintiffs's attorney has repeatedly accused defense counsel of unprofessional and unethical conduct.

Id. at 1-2.  Judge Molzen also agreed with the Defendants that telephonic and in-person conversations with Mr. Bello were increasingly drawn out and non-productive.  She wrote: "Indeed, in my limited interactions with counsel, Plaintiff's attorney seems to feel that even housekeeping matters require a detailed discussion of the merits of his clients' claims."  Id. at 2.  Judge Molzen ultimately issued the extraordinary relief requested, requiring all further communications between counsel to be only in writing.  See id. at 3.

28.  On March 9, 2005, in accord with Judge Vazquez' Order of Reference, Judge Molzen issued Proposed Findings and Recommended Disposition on Plaintiffs' Motion to Vacate or to Reconsider and Plaintiffs' Motion for Default Judgment.  See Doc. 89.  This document dealt with the Plaintiffs' request to reconsider default on Basmajian.  Judge Molzen rejected all of the Drains' contentions, and recommended denial of the motion to vacate or reconsider the decision granting Basmajian's motion to dismiss and Plaintiffs' motion for default judgment against Basmajian.  See id.

29.  On March 11, 2005, Mr. Bello filed Objections to Judge Molzen's Opinion and Order

granting AHL's motion to compel.[1]  See Plaintiffs Objections to Judge Molzen Opinion and Order Granting Motion to Compel (Doc. 98) (Tab 8).  He contended that his clients never consented to Judge Molzen's involvement in this case, and objected to her reference to the <u>Wheeler</u> case in her memorandum opinion, arguing such a mention was "a serious deviation from judicial principles . . . ."  Mr. Bello stated: "Furthermore, the order we believe by its incorporation of extra judicial findings, evidence and matters shows an insurmountable bias against the cause of the Plaintiffs and are [sic] inappropriate and unusual judicial decision [sic]."  Id. at 1.

30.  On March 15, 2005, Judge Molzen submitted a second Proposed Findings and Recommended Disposition recommending that Mr. Bello's response and objections to the Order of Reference be overruled.  See Proposed Findings and Recommended Disposition on Plaintiff's Objections (Doc. 90) to District Judge Vazquez' Order of Reference Pursuant to 28 U.S.C. § 636 (Doc. 78) at 1, 4 (Doc. 99) (Tab 9).  In her recommendation, Judge Molzen cited 28 U.S.C. § 636(b)(1)(B), and noted that, under the statute, a party's consent is not necessary.  See id. at 1-2.  Her order recites: "The present case indeed poses challenges that could bog down its progress -- Plaintiffs' counsel has sought reconsideration on virtually every ruling in this action as he did in the only other case he has filed in this federal district."  Id. at 2.

31.  On March 16, 2005, even though Judge Molzen granted the Defendants' motion to compel production under the district's local rules, Mr. Bello filed a new Motion for Protective Order,

---

[1]  The document states that the Drains are objecting to Judge Molzen's granting of the Defendants Wells Fargo and Fairbanks' Motion to Compel, but Judge Molzen did not grant the Defendants Wells Fargo and Fairbanks' Motion to Compel until June 6, 2005 -- almost three months after Mr. Bello filed his motion objecting to the granting of it.  See Proposed Findings and Recommended Disposition and Order on Certain Pending Motions at 3-4 (Doc. 151).  Although Mr. Bello identifies the wrong Defendants in his objections, he dates the granting of the motion to compel at March 2, 2005, which is the date Judge Molzen granted AHL's Motion to Compel.

seeking to avoid production of information under rule 26.3(d) and arguing the same grounds that were previously rejected.  See Plaintiffs Motion for Protective Order (Doc. 103).

32. On March 16, 2005, after Judge Molzen granted the Defendants' joint motions to compel only written communications, Mr. Bello filed an untimely response and objection to AHL's original motion.  See Plaintiffs Response and Objections to Defendants Accredited Home Lenders Motion to Require Only Written Communication Between Opposing Counsel (Doc. 104).

33.  On March 22, 2005, Mr. Bello filed a Motion to the Court to Vacate Orders.  See Plaintiffs Motion to the Court to Vacate Orders (Doc. 105) (Tab 10).  Mr. Bello sought to have the Order of Reference withdrawn, and have Chief Judge Vazquez void all orders and memoranda that Judge Molzen issued.  See id. at 1, 8.  In this motion to vacate orders, Mr. Bello again raised his claim that the Drains never consented to Judge Molzen's involvement in the case.  He stated:

> The Magistrate Judge in disregard of Plaintiffs [sic] Objection, has continued to issue orders, proposed findings and recommendation, analysis and decisions, as well as, memorandum opinions and order [sic], even on matters where the District Judge have [sic] already exercised jurisdiction.  These unconstitutional acts, muddling up Plaintiffs [sic] case, are rather shocking to the conscience and they justify an appearance of judicial impropriety to reasonable public.

Id. at 2.

Mr. Bello argued: "These, together with several other examples would create reasonable suspicion of judicial impropriety in a judicial system where the Court is under mandate to maintain a neutral posture." Id. at 4. Mr. Bello contended that Judge Molzen's decisions appear "as if driven by preconceived determination, the court in furtherance of a common goal to deprive these Plaintiffs their due process and equal protection of the law and the constitution and the benefits of the consumer protection laws made to protect them, ignored all the anomalies in its errors." Id. at 6.

34.  On April 1, 2005, Fairbanks and Wells Fargo filed a motion for sanctions.  See Wells

Fargo's and Fairbanks' Motion for Sanctions (Doc. 117). The basis of their motion was the Drains' and Mr. Bello's repeated refusal to comply with the Court's orders, directives, and rules, especially with regard to disclosure obligations under rule 26.3(d). See id.

35.   Mr. Bello filed a writ of mandamus with the Tenth Circuit seeking to compel Chief Judge Vazquez to enter a default judgment against Basmajian, whom Chief Judge Vazquez previously had dismissed. The Tenth Circuit denied the Drains' petition, finding that it was a request for extraordinary relief and was not applicable when the issue of denial of a default was still subject to appeal. See Order No. 5-2080, In re: James Drain and Rachel Drain, filed April 5, 2005 (Doc. 128).

36.   On April 13, 2005, AHL filed a new motion for an order to show cause and to hold the Drains in contempt for failure to comply with mandatory disclosure requirements under the district's local rule. See Motion for Order to Show Cause and Contempt (Doc. 131).

37.   On April 21, 2005, Mr. Bello filed a response and objections in opposition. See Plaintiff's Response and Objections to Defendants Motion for Sanctions (Doc. 133) (Tab 11). Mr. Bello accused opposing counsel of bad faith, filing groundless and frivolous motions, and of unethical treatment. See id. at 1-2. Mr. Bello argued: "Miller Stratvert have benefited [sic] from these redundant, frivolous and vexatious filings and have billed extensively for every time and every cost to their deep pocket corporate clients . . . ." Id. at 2. Mr. Bello accused the Defendants of "misrepresentation" and self-dealing. Id. at 2-3. "Would they have wasted the courts [sic] time and Plaintiffs [sic] time, if they are not receiving payments from billing for these frivolous and vexatious filings?" Id. at 3.

38.   On June 17, 2005, and pursuant to Chief Judge Vazquez' Order of Reference, Judge Molzen issued a Proposed Findings and Recommended Disposition and Order on Certain Pending

Motions. <u>See</u> Doc. 151 (Tab 12).  Judge Molzen found that the Drains had not timely responded to discovery and ordered that Fairbanks' requests for admissions be deemed admitted as sought in its Motion to Deem Admitted its First Requests for Admission to James Drain (Doc. 87). <u>See</u> <u>id.</u> at 5-6.  Judge Molzen also, in granting the Defendants' Joint Motion for Extension of time to Identify Experts and Provide Reports, filed March 30, 3005 (Doc. 112), also found that Mr. Bello's objections to "<u>*every*</u> ruling" made by the Court have essentially "bogged down the discovery process and any hope of an expeditious and fair progression through the stages of litigation." <u>Id.</u> at 6 (emphasis in original).  Judge Molzen concluded that Mr. Bello's discovery abuses warranted monetary sanctions and reflected bad faith. <u>See</u> <u>id.</u> at 6-8.  She stated: "Plaintiffs are cautioned that this Court will not tolerate such blatant disregard for their discovery obligations." <u>Id.</u> at 7.  In addition, she found that the Plaintiffs' counsel was "injecting the nonsense and confusion into this process. " <u>Id.</u>  She further found that the Defendants' good-faith attempts at discovery had been evaded at every turn. <u>See</u> <u>id.</u> at 8. Judge Molzen further ordered Mr. Bello to comply with discovery and denied his motion for protective order. <u>See</u> <u>id.</u> at 4, 5.

39.  To consider the imposition of sanctions and monetary awards, Judge Molzen set a show cause hearing and required personal appearances by the Drains and by Mr. Bello. <u>Id.</u> at 11.

40.  On June 20, 2005, Fairbanks and Wells Fargo filed a new motion for discovery sanctions as a result of the Drains' and Mr. Bello's failure to comply with discovery obligations. <u>See</u> Fairbanks' and Wells Fargo's Motion for Discovery Sanctions (Doc. 152).

41.  On June 21, 2005, Chief Judge Vazquez issued a Memorandum Opinion and Order adopting Judge Molzen's recommended disposition on various motions, including the motion to reconsider dismissal of Basmajian, the motion to reconsider denial of default, and the objections to the Order of Reference. <u>See</u> Memorandum Opinion and Order (Doc. 172) (Tab 13).  In her ruling,

26

Chief Judge Vazquez commented:

> The Court is concerned that Plaintiffs' counsel's fundamental misunderstanding of, or lack of familiarity with, the Federal Rules of Civil Procedure and the Court's local rules, is jeopardizing Plaintiffs' case. The Court, therefore, will require Plaintiffs' counsel to read the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the District of New Mexico within ten days of the date of this Order. The Court will also require Plaintiffs' counsel to certify that he has provided Plaintiffs with a copy of this Memorandum Opinion and Order.

Id. at 4-5.  In rejecting all of Mr. Bello's objections to the various orders which were the subject of this ruling, Chief Judge Vazquez noted that "even a cursory review of Plaintiffs' filings reveal that [Mr. Bello's] argument is wholly without merit." Id. at 5.  Chief Judge Vazquez noted that referring matters to magistrate judges does not require the consent of the parties.  See id. at 5-6.  She stated: "If Plaintiffs' counsel had conducted any legal research, or even read the statute, he would have discovered that his argument was contrary to the plain language of the statute and Tenth Circuit caselaw.  Plaintiffs' position is wholly without legal merit . . . ." Id. at 6.  Chief Judge Vazquez concluded:  "Plaintiffs are hereby cautioned that frivolous arguments may subject Plaintiffs and/or their counsel to Rule 11 sanctions." Id. at 6.

42.  On June 23, 2005, Fairbanks and Wells Fargo filed two motions to compel responses to discovery requests.  See Defendant Fairbanks' Motion to Compel Response to its Second Request for Production to James Drain (Doc. 173); Defendants Fairbanks' and Wells Fargo Bank's Motion to Compel Responses to Discovery Requests Served on Plaintiffs on May 13, 2005 (Doc. 174).

43.  On June 23, 2005, AHL filed a new motion for discovery sanctions.  See Defendant Accredited Home Lenders, Inc.'s Motion for Discovery Sanctions (Doc. 175).  The basis was that the Drains and Mr. Bello failed to appear for a scheduled deposition.  See id. ¶ 3, at 1-2.

44.  On June 23, 2005, AHL filed two motions to compel responses to discovery requests,

contending that interrogatories and requests for production were served and that the Drains and Mr.

Bello failed to respond.  <u>See</u> Accredited Home Lenders, Inc.'s Motion to Compel Responses to

AHL's Interrogatories and Requests for Production to Rachel Drain (Doc. 176); Accredited Home

Lenders, Inc.'s Motion to Compel Responses to AHL's Interrogatories and Requests for Production

to James Drain (Doc. 178).  It also filed two motions to deem admitted its requests for admission

because the Drains failed to respond.  <u>See</u> Accredited Home Lenders, Inc.'s Motion to Deem

Admitted its Requests for Admission to Rachel Drain (Doc. 177); Accredited Home Lenders, Inc.'s

Motion to Deem Admitted its Requests for Admission to James Drain (Doc. 179).

    45. On July 1, 2005, Mr. Bello filed Objections to Judge Molzen's recommended disposition

on the motion to set aside default on the Defendants' counterclaims.  <u>See</u> Plaintiffs Objections to

Judge Molzen Recommended Finding that Plaintiffs' Motion to Set Aside Default (Doc. 50) be

Granted and Order on Certain Pending Motions (Doc. 183) (Tab 14).  Mr. Bello accused Judge

Molzen of impropriety:

> [I]t is evidently clear that a reasonable person could conclude that ex-
> parte consultations and other inappropriate judicial partiality in favor
> of Defendants and their attorneys for personal benefits are present in
> this case.  Judicial impropriety could be reasonably determined to be
> present here, in the form of extra judicial collective understanding
> being at the core of the courts [sic] disregard for the rule of law, and
> for pursuing the one sided recital of Defendants and their attorneys'
> arguments as well.

<u>Id.</u> at 3.  Mr. Bello contended:  "The question in the minds of reasonable public [sic] is whether these

acts, the impropriety and partiality were intentional and motivated by pecuniary interest and or bias

and or affinity."  <u>Id.</u> at 4.  Mr. Bello further stated:

> The Judge and the Defendants [sic] attorneys have continually in
> series of unethical, biased and condescending manner, as if they are
> the judge, the jury and the final arbiter, while we are still in discovery
> referred to the Plaintiffs and Plaintiffs [sic] attorney as "confused"

> "uninformed" injecting nonsense into the case for raising his clients
> [sic] legally valid objections in their responses. . . . It would not be
> surprising at this point if Plaintiffs and their attorney are collectively
> referred to as "Sambos."
>
> For the record we do not have a biographic history of the magistrate
> judge and are not aware of the posting of a full professional history
> we could review and we shall proceed to request such disclosures.

Id. at 45.  Mr. Bello concluded:

> It is apparent that the judicial offices involved in this case have
> interjected themselves as the other unknown defendants willing to
> bring about a result, by intimidation, imposition, high-jacking and all
> else, other than that derived under law.  If all these, are not grounds
> for finding of judicial bias and appearance of impropriety.  What is?

Id. at 6.

46. On July 29, 2005, Chief Judge Vazquez issued a Memorandum Opinion and Order, see

Doc. 196; and, on August 1, 2005, she issued an Amended Memorandum Opinion and Order, see

Doc. 197, affirming Judge Molzen's ruling, which directed the Drains to produce the medical

information required pursuant to D.N.M.LR-Civ. 26.3(d).  Chief Judge Vazquez rejected every

objection that Mr. Bello asserted.

47. On August 11, 2005, the Drains filed a Motion to Recuse Magistrate Judge.  See

Plaintiffs Motion to Recuse Magistrate Judge Together with Certificate of Good Faith (Doc. 203)

(Tab 15).  Mr. Bello asserted that his clients never consented to Judge Molzen's participation in this

case.  See id. at 1.  He also stated:

> Furthermore, the magistrate judge should be recused for bias,
> evidenced in the record by opinions and demeaning statements and
> characterization against Plaintiffs and their causes and for
> demonstrated partiality in favor of the Defendants, their law firms and
> attorneys.  As well as, for wantonly issuing orders and opinions
> contrary to the law, the Constitution of the United States and contrary
> to judicial expediency principles, and without regard to the cost of
> litigation and the burden on Plaintiffs and their effort to obtain justice

29

within the laws of the land.

Id. at 1-2.  Mr. Bello asserted:

> The record will reflect the practice in the United States Courts for the
> District of New Mexico, which ran contrary to other federal
> jurisdictions, the public have no means or access to the introduction,
> biographies and information on the district judges [sic] and magistrate
> judges [sic] past and present associations, beliefs or judicial
> temperament.   The United States Congressional information on
> United States District Judges does not include information on
> magistrate judges.
>
> The concealment and non disclosure of prior associations is of serious
> concern to the public . . . .

Id. at 2 (Tab 15).  He further alleged:

> Judge Karen Molzen should be recused and or disqualified from any
> further actions in this case.  She has interjected and entangled herself
> with the causes of the Defendants and she has not been impartial.
> She had formed opinion on the merit of the case other than what she
> had learned from the participation in this case.

Id. at 3.  He stated that Judge Molzen's rulings, were in "conflict with the law, the constitution and

proper judicial dispositions."  Id. at 3.  Mr. Bello further argued that Judge Molzen "has exhibited

bias against Plaintiffs [sic] causes and interest and have may harbor [sic] past associations and

interests in the Defendants, their law firms and their attorneys upon which she had been impartial

and have [sic] favored Defendants in her ruling [sic] and that the rulings are not just unsatisfactory,

they are arbitrary and contrary to the law, and to judicial dispositions and principles."  Id. at 4.

48.  On August 11, 2005, the Drains filed a new Motion to Recuse the Chief District Judge.

See Plaintiff's Motion to Recuse the Chief District Judge Together with Certificate of Good Faith

(Doc. 204) (Tab 16).  The Drains alleged "the honorable judge [Vazquez] has demonstrated personal

bias and prejudice against Plaintiffs and their cause and have [sic] exhibited partiality in favor of the

Defendants and their law firms and attorneys that her impartiality is reasonably questioned."  Id. at

1. Mr. Bello demanded that Chief Judge Vazquez disclose any relation she had with the Defendants'
attorneys. He complained: "[T]he honorable judge have [sic] not responded nor make [sic] any
disclosures as requested." Id. Because he did not receive disclosures, he stated: "Reasonable
inference of judicial impropriety and partiality herein calls for recusal and disqualification of the
Chief Judge." Id. Mr. Bello stated:

> In view of the anomalies in judicial dispositions and principles and
> continuing bias against Plaintiffs [sic] interest and in favor of the
> Defendants, Plaintiffs filed two requests, for disclosures pursuant to
> the rules for recusal to both, the District Judge and the Magistrate
> Judge in the case. Though, the Magistrate judge responded with an
> order setting aside the request to disclose without declaration of self
> examination of all the items under the statute, **28 U.S.C. § 455**,
> Plaintiffs have not received any information on the request directed
> to the District Judge as of today, August 8, 2005.

Id. at 3 (emphasis in original). Mr. Bello also stated: "Clearly, the Chief Judge has personal bias
against the Plaintiffs [sic] causes and interests and may also include having personal knowledge of
disputed evidentiary facts of these proceedings gathered from sources outside of the proceedings."
Id. Mr. Bello then complained of Chief Judge Vazquez's rulings and stated: "These conducts [sic],
facts and evidences, call in to question judicial impropriety, and duty and oath." Id. at 4. He
concluded by demanding that Chief Judge Vazquez step down from the case. See id. at 5.

49. On August 11, 2005, Judge Molzen conducted a hearing on the Defendants' motions for
sanctions. See Clerk's Minutes, filed August 15, 2005 (Doc. 205) (Tab 17). The Clerk's Minutes
stated:

> The Court cautions Mr. Bello about repeatedly disregarding the
> Federal Rules of Civil Procedure; his allegations of bias; his attacks
> on the Defendants and on the Court. Judge Molzen indicates her
> belief that sanctions will have to be imposed. The Court may
> recommend dismissal of the case to Chief Judge Vazquez.

50. On August 30, 2005, Judge Molzen issued her rulings on various discovery motions,

31

finding that the Drains failed in their obligations to provide mandatory discovery and granting the

Defendants' motions to compel.  See Order on Pending Discovery Motions (Doc. 207).

51.  On September 30, 2005, the Drains filed a Notice of Appeal seeking Tenth Circuit

review of Judge Molzen's discovery order.  See Plaintiffs Notice of Appeal to the Tenth Circuit

Court of Appeals at 1 (Doc. 213).

52.  On November 3, 2005, the Tenth Circuit dismissed the Drains' appeal for lack of

appellate jurisdiction and noted that the Drains were improperly seeking to appeal a non-appealable

discovery order.  See Tenth Circuit Order at 1-2 (Doc. 219).

53.  On December 16, 2005, Judge Molzen filed her Proposed Findings and Recommended

Disposition on sanctions.  See Proposed Findings and Recommended Disposition (Doc. 220).  As

the findings of fact deal with Mr. Bello's litigation conduct, the Court has copied the entirety of the

recommended findings and included them in Tab 18.

54.  In commenting on Mr. Bello's repeated requests that Magistrate Judge Molzen recuse,

she restated what she had written in a previous order (Doc. 194):

> I have simply correctly applied the applicable law to the facts, and I
> have provided the parties with my rationale and citations to
> authorities upon which I have relied.  As the Tenth Circuit noted,
> "adverse rulings cannot in themselves form the appropriate grounds
> for disqualification." . . . I will not repeat the other bald and
> unsubstantiated accusations leveled against me, the defendants'
> attorneys and the presiding judge.  I will simply reply that I find them
> to be lacking in a factual predicate . . . .  "There is as much obligation
> for a judge not to recuse when there is no occasion for him to do so
> as there is for him to do so when there is.  A judge should not recuse
> himself on unsupported, irrational, or highly tenuous speculation."
>
> Thus, although it is tempting to pass along this most trying case to
> another judge, I respectfully refuse to recuse.

Proposed Findings and Recommended Disposition at 3 (Doc. 220) (Tab 18) (citations omitted).

Judge Molzen's analysis traced the history of Mr. Bello's refusal to comply with court orders. She noted that Mr. Bello failed to serve complete and timely responses to all of the Defendants' discovery requests, including interrogatories, requests for production, and requests for admission. See id. at 7. Judge Molzen commented that Mr. Bello's conduct forced the Defendants to file motions to compel on virtually every discovery request, and that Mr. Bello failed to file responses in opposition to the majority of the motions. See id. at 7.

55. Judge Molzen noted that she granted the Defendants' motion to compel. See id. at 4. Mr. Bello neither complied nor sought a stay of her order. See id. at 5. And, notwithstanding her order and Chief Judge Vazquez's order that he comply, "Plaintiffs have willfully failed to provide the medical information and releases to the Defendants." Id. at 6.

56. Judge Molzen found that, for two months, defense counsel sought to find an acceptable date to depose the Drains, but Mr. Bello failed to cooperate in selecting a date, and, ultimately, the Defendants noticed the Drains' depositions for May 26, and May 27, 2005. See id. at 7. Upon receipt of the deposition notice, Mr. Bello contended that he had a conflict and proposed a new date for taking the Drains' depositions. See id. The Defendants complied with the request to vacate, and rescheduled and filed notices for the depositions for the date that Mr. Bello proposed. See id. Judge Molzen also recognized that, although a mail return receipt indicated that the Michael Morales received amended deposition notices on May 17, 2005, and Mr. Bello acknowledged that Morales was authorized to accept mail on his behalf, Mr. Bello faxed a letter, ten days after receiving the notice of the amended dates, stating that he had not received word about the final scheduling of the depositions, and that his clients were no longer available on that date. See id. at 7-8. Neither Mr. Bello nor his clients appeared for the depositions on that date. See id. at 8. Mr. Bello had not filed a motion for protective order or a notice of non-appearance. See id. at 7, 8.

33

57. Mr. Bello's failure to comply with discovery went beyond not providing the rule 26.3(d) information and his non-appearance at the deposition. Judge Molzen wrote: "Plaintiffs also failed to serve complete and timely responses to Defendants' discovery requests, including interrogatories, requests for production and requests for admission. The docket sheet reflects that Defendants had to file motions to compel virtually every discovery request." Id. at 7.

58.  Judge Molzen found that Mr. Bello was making misrepresentations by the use of erroneous certificate dates. See id. at 9. On multiple exhibits offered at the hearing, there were "inaccurate mailing certifications by Mr. Mr. Bello." Id. In other words, Mr. Bello stated on his certificate of service that he had mailed documents on a certain date. The postmarks, however, invariably conflicted with those representations. Judge Molzen included a chart showing at least fifteen instances where Mr. Bello's certification was a misrepresentation. See id.

Judge Molzen wrote:

> As seen from the chart, the postmarks on these exhibits reflect that Plaintiffs' actual mailing dates were days after the indicated mailing date set forth in the certifications. Mr. Bello maintains that these discrepancies amount to no big deal, and as to those which show just a one or two day delay in the postmark, I agree. Interoffice procedures, such as placing the documents in a secretary's in-box could explain such a short delay. But when the postmark differs from the certification dates by *four to eight days*, the delay in mailing significantly reduces the amount of time available for Defendants to file timely responses.

Id. at 10 (citations omitted)(emphasis in original). Judge Molzen concluded: "Thus, I find that the exhibits are substantially what Defendants purport them to be. Based upon those admitted exhibits and the received testimony, I further find that they establish a pattern and practice by Mr. Bello of falsely certifying the actual date of mailing." Id. at 12. Judge Molzen also found support for the Defendants' argument that Mr. Bello ignored unfavorable precedent and showed a lack of familiarity

with the law.  See id. at 12-13.  And, given the history of the litigation, Mr. Bello blatantly

disregarded Court orders.  See id.

      Judge Molzen also found that, on December 14, 2004, Mr. Bello arrived for a rule 16 hearing

forty-five minutes late; again, one month later, he arrived one hour and fifteen minutes late for a rule

16 conference.  See id. at 12-13.  He failed to appear altogether for a scheduled deposition.  See id.

Judge Molzen found: "Plaintiffs' pleadings have grown more and more venomous against opposing

parties and their counsel.  Very early on it became apparent that Mr. Bello was making accusations

of unprofessional conduct by opposing counsel."  Id. at 14-15.  Judge Molzen wrote:

> Mr. Bello's unfounded claims of bias and unfair treatment by both the
> presiding judge and the referral magistrate judge seem part and parcel
> of his litigation strategy in the District of New Mexico.  Plaintiffs'
> pleadings in this matter are replete with baseless speculation that
> decisions against their positions have been decided on something
> other than the merits of the arguments.
>
> Such groundless assaults on our judicial officers display obvious but
> unwarranted hostility and a true lack of respect for the justice system.

Id. at 15-16.

      59.  After conducting an Ehrenhaus v. Reynolds analysis, Judge Molzen recommended

dismissal of the case with prejudice.  See id. at 17-24.

      60.  On March 1, 2006, Chief Judge Vazquez issued a Memorandum Opinion and Order that

discussed in detail the problems that Mr. Bello had occasioned.  See Doc. 228 (Tab 19).  On page

one of her memorandum, she referred to

> an ongoing and unrelenting course of improper and vexatious conduct
> by Plaintiffs and their counsel.  Plaintiffs and their counsel's conduct
> in this case has been marked by repeated failures to follow the
> requirements imposed on all parties and their representatives in this
> Court; unsupported accusations against the Court and other counsel;
> purposefully misleading statements and citations; and a complete lack
> of understanding of this Court and its process.

Id. at 1-2. Chief Judge Vazquez' memorandum discussed the numerous violations of standards of practice, professionalism, and decorum expected of counsel, including Mr. Bello's failure to respond to discovery and his failure to appear at the depositions. See id. at 3-4. Chief Judge Vazquez noted that Judge Molzen found that Mr. Bello's responses to discovery were "untimely, incomplete, evasive, and, at times, nonsensical." Id. at 3.

Chief Judge Vazquez discussed Mr. Bello's unfounded accusations against opposing counsel and the Court, see id. at 7-9, as well as his erroneous belief that judges are required to answer parties' interrogatories or demand for disclosure under 28 U.S.C. § 455, see id. at 9. Commenting on Mr. Bello's repeated practice of misrepresenting the day on which he served pleadings on opposing counsel, Chief Judge Vazquez stated: "[T]he overwhelming evidence compels the finding that Plaintiffs repeatedly prepared false certificates of services." Id. at 11. In making this determination, Judge Vazquez rejected the allegations and explanations that Mr. Bello proffered. See id. She commented on Mr. Bello's "complete lack of understanding of federal civil procedure" and that he has "refused to follow the Court's direction and orders clarifying the applicable law and procedure." Id. Despite the Court ruling twice on the issue and the lack of support for the Drains' position, Mr. Bello continued to "argue in nearly every subsequent filing that the Magistrate Judge did not have jurisdiction to make proposed findings and recommended dispositions on motions." Id. at 13-14. Mr. Bello demonstrated his lack of understanding of the rules relating to service of process, see id. at 14, and even after the Court ruled on his demand that a defendant -- whom had not been properly served -- be declared in default, Mr. Bello persisted in repeated arguments to the Court on the issue. See id. at 14.

Chief Judge Vazquez also concluded that Mr. Bello misrepresented the law to the Court by "his ongoing and apparently intentional practice of misfiling legal precedent." Id. at 15.

Specifically, Mr. Bello cites cases for propositions for which they do not stand. Id. at 15-16.

After conducting an independent Ehrenhaus v. Reynolds analysis, Chief Judge Vazquez reached the same conclusions as had Judge Johnson and Chief Magistrate Judge Garcia in Wheeler, and as had Judge Molzen in Drain.  See id. at 16-23.  Chief Judge Vazquez imposed monetary sanctions of $5,000 on Mr. Bello personally and ordered that the Drains' case be dismissed with prejudice. See id. at 23.

### C.   In re: The Matter of Gany Mike Bello.

1.  On January 25, 2006, Chief Judge Vazquez entered, pursuant to D.N.M.LR-Civ. 83.10, an Order to Show Cause and Order to Appear. See Order to Show Cause and Order to Appear, Misc. No. 2006-06.  Chief Judge Vazquez stated that she had determined that Mr. Bello lacks a basic understanding of the rules of practice, abuses opposing counsel with specious charges and allegations, and lacks respect for the judicial tribunal.  See id. at 1.  She determined that there appears to be good cause for issuance of the order to show cause.  See id.

2.  Chief Judge Vazquez directed that Mr. Bello would come before three Article III judges sitting en banc to show cause, if any he has, why the Court should not revoke his privileges to practice in the United States District Court for the District of New Mexico. See id.  She stated that Mr. Bello may submit written documentation to the Court before the hearing if he so desired.  See id.  She also scheduled the hearing for February 28, 2006. See id.

3.  On February 13, 2006, Mr. Bellow filed a request for information.  See Respondents Request for Information, Misc. No. 2006-06.  In that document, Mr. Bellow submitted a request for specific information consisting of facts and allegations, evidences and records, to enable him to prepare his defense in accordance with due process.   See id. at 1-2.  Specifically, Mr. Bello requested all facts and allegations, including evidence and record, supporting the determination that

he lacks a basic understanding of the rules of practice, that he abuses opposing counsel with specious charges and allegations, and that he lacks respect for the judicial tribunal. See id. ¶¶ 1-3, at 1.

4. On February 23, 2006, Mr. Bello sought a continuance. See Motion for Continuance, Misc. No. 2006-06. He asked the Court to reset the hearing for a later date to allow him the opportunity to file an answer upon his receipt of the necessary and essential facts, evidence, and specific allegations from the Court. See id. at 1. He stated that he had received Chief Judge Vazquez' order to show cause on February 2, 2006 and stated that due process required that the Court confront him with the facts and allegations against which he is being asked to defend. See id.

5. On February 23, 2006, the Honorable James A. Parker, Senior United States District Judge, entered an order addressing Mr. Bello's request for information. Judge Parker stated:

> Mr. Bello is hereby advised that the information which the panel will consider at the time of the hearing on the Order to Show Cause appears in the court records in Wheeler v. American Heritage Bank and Bob Sellers, Civ. No. 04-0271 WPJ/LFG, and James Drain and Rachel Drain v. Wells Fargo Bank, Minnesota, N.A. et al., Civ. No. 04-0399 MV/KBM. The panel will consider all papers, pleadings, memoranda, reports, orders, and decisions, as well as all transcripts of proceedings and clerk's minutes.

Order at 1. Judge Parker also vacated the February 28, 2006 hearing and stated that the hearing will be reset at a future date. See id.

6. On March 7, 2006, Chief Judge Vazquez filed another notice of order to show cause, setting the hearing for 11:00 a.m. on March 22, 2006. See Notice of Order to Show Cause and Order to Appear, Misc. No. 2006-06.

7. On March 21, 2006, Mr. Bello filed his objections and answers. See Respondent's Objections and Answer, Misc. No. 2006-06. Mr. Bello argued that the Order to Show Cause and to Appear was unconstitutional and violated due process, because it failed to provide any notice as to

the specific facts on which the allegations are based. See id. at 1. Citing In re Ruffalo, 390 U.S. 544,

550-551 (1968), Mr. Bello asserted that the Court should not subject him to uncertainty in defending

his privilege to practice in this District. See id. at 2.

8.   On March 22, 2006, Mr. Bello sent to the Court, by facsimile transmission, copies of

Respondent's Motion for Injunctive Relief with Affidavit. See Respondent's Motion for Injunctive

Relief with Affidavit, Misc. No. 2006-06. Mr. Bello argued that injunctive relief was necessary to

protect his constitutional right to due process. See id. at 1-5. He again argued that the scheduled

hearing would violate his right to be informed of the nature and cause of the accusation against him,

and to be confronted with the witnesses against him. See id.

The Court received the facsimile transmissions from NOK Global. The Court looked at the

web page for NOK Global Corporate Consultants Inc. The web page indicates that NGCCI can help

with, among other things, "Legislative Process and Drafting" and "International Law." The web

page states: "We, at NOK Global were part of the team that, wrote the law on the Internet. See,

Model State Computer Crimes Code on Legislative Process and Drafting Page, Preamble of

Construction and Commentary sections." The web page later states: " We provide services from

"A" to "Z" on Corporate & Institutions business and legal environment world-wide." NOK states:

"We have offices in New Mexico and Oklahoma, USA . . . ." The contact information is "505 742-

1410," a New Mexico telephone number.

9.   The Court sent by facsimile transmission notice to Mr. Bello indicating that it had

received the Respondent's Motion for Injunctive Relief with Affidavit. The Court notified Mr. Bello

that it would hear his motion for injunctive relief immediately before the hearing on the Order to

Show Cause. See Fax Transmittal Sheet; Notice of Hearing, Misc. No. 2006-06.

10.   Mr. Bello did not appear for the scheduled hearing.

## LAW REGARDING INJUNCTIVE RELIEF

To obtain a permanent injunction, the party requesting such relief bears the burden of showing: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." Fisher v. Oklahoma Health Care Auth., 335 F.3d 1175, 1180 (10th Cir. 2003)(citations omitted).   To obtain a preliminary injunction, a plaintiff must show: "(1) a substantial likelihood of success on the merits, (2) that the plaintiff will suffer irreparable injury if the preliminary injunction is denied, (3) that the threatened injury to the plaintiff outweighs the injury to the defendant(s) caused by the preliminary injunction, and (4) that an injunction is not adverse to the public interest." Aid for Women v. Foulston, No. 04-3310, 2006 U.S. App. LEXIS 2366, at *32 (10th Cir. January 27, 2006)(citation omitted).   The right to relief under a preliminary injunction "must be clear and unequivocal." Id. at *32-33 (citation and internal quotations omitted).

## LAW REGARDING DISCIPLINING ATTORNEYS

D.N.M.LR-Civ. 83.9 provides:

> The Rules of Professional Conduct adopted by the Supreme Court of
> the State of New Mexico apply except as otherwise provided by local
> rule or by Court order. *See, e.g.*, D.N.M.LR-Civ. 83.4(c). Lawyers
> appearing in this District must comply with the section for lawyers of
> "A Creed of Professionalism of the New Mexico Bench and Bar."

D.N.M.LR-Civ. 83.9 pertains to attorney discipline and provides in relevant part:  **"(a) Disbarment or Suspension of an Attorney.**  The Court, *sua sponte* or upon recommendation by the State Bar of New Mexico Disciplinary Board, may discipline, suspend or disbar an attorney under D.N.M.LR-Civ. 83.9."  Federal courts have "inherent supervisory power over the attorneys practicing before them."  United States v. Ryans, 903 F.2d 731, 735 n.4 (10th Cir. 1990).   "Courts have long

recognized an inherent authority to suspend or disbar lawyers. This inherent power derives from the lawyer's role as an officer of the court which granted admission." In re Snyder, 472 U.S. 634, 643 (1985).

## ANALYSIS

The Court will deny Mr. Bello's motion for injunctive relief. "This request [for the court to enjoin itself] is extraordinary." United States v. Rohm & Haas Co., 721 F. Supp. 666, 699 (D.N.J. 1989).

Even assuming that a court can or should enjoin itself, Mr. Bello has not shown the Court why he is likely to succeed on the merits. A number of judges now have reviewed the two matters he has had before the Court and concluded that he lacks a basic understanding of the rules of practice, abuses opposing counsel with specious charges and allegations, and lacks respect for the judicial tribunal.

The Court also does not believe that Mr. Bello has shown that irreparable harm will occur to him if the Court does not cease these proceedings. While the privilege of practicing in federal court is precious, Mr. Bello has the right to appeal any disciplinary measure that the Court decides to impose. See United States v. Rohm & Haas Co., 721 F. Supp. at 699 ("If our entry of this decree is improper and deprives Manor Health of legal rights to which it is entitled, then the Court of Appeals will not hesitate to upset our ruling. This avenue of relief defeats any claim that Manor Health will be 'irreparably harmed' if we enter this decree."). Moreover, Mr. Bello has not pointed to any cases that he has pending in the District of New Mexico or that he intends to file, and thus there is not evidence before the Court that any order will harm him at all.

Mr. Bello has not shown that any harm he will suffer if the Court does not enjoin itself substantially outweighs the harm that will occur if the Court does enjoin itself. The Court has

dismissed both of his clients' cases. Again, he can appeal whatever decision the Court imposes, but the Court and Mr. Bello's potential clients will suffer great harm if the Court is not allowed to discipline the attorneys that practice before it.

Finally, the Court believes that the public's interest greatly outweighs Mr. Bello's personal interest in this matter. While the right to represent persons in federal court can be professionally and financially rewarding, the rights of the litigants and of the public are paramount in this situation. The record of the two cases before the Court suggest that Mr. Bello did not serve his clients well, and the Court cannot long endure a single attorney with two cases taking so much of its judicial resources and energy.

Accordingly, Mr. Bello has not met the requirements for injunctive relief. The Court will not grant his request that the Court enjoin itself.

While lacking a certain amount of professional elegance, Mr. Bello's motion is more a request -- not that the Court cease to order him to show cause -- but to give him notice sufficient to prepare a response and a defense. While the Court believes that its prior two notices have been sufficient to put Mr. Bello on notice of the Court's concerns, the Court will nonetheless, with this Memorandum Opinion and Order, give Mr. Bello notice again of its concerns. And to facilitate his preparation for the show cause hearing, the Court will provide him with two binders containing the docket sheet for each case and many of the salient portions of pleadings, documents, transcripts, orders, memorandum opinions, and minutes that are relevant to Mr. Bello's knowledge of law, procedure, dealings with opposing counsel, and respect for the tribunal.

This memorandum and order does not, as Mr. Bello can see, include a discussion of all pleadings or activity in the separate cases, but only those that the Court believes call into question the matters that the panel will consider. The Court is providing Mr. Bello with the key documents,

pleadings, and opinions. They are indexed and tabbed for his review. The Court thus believes it has summarized herein the numerous instances of Mr. Bello's lack of knowledge of the law and the rules of procedure, his disrespect for the court and opposing counsel, and his intentional misrepresentation of fact and law. The Court believes that it has given Mr. Bello full notice of what matters it will consider.

The Court also sends to Mr. Bello a copy of A Creed of Professionalism of the New Mexico Bench and Bar. The local rules incorporate this Creed. The Court believes that Mr. Bello's actions herein violate a number of its provisions.

The Court will set a hearing on the Order to Show Cause at a future date.

**IT IS ORDERED** that Respondent's Motion for Injunctive Relief is denied in part and granted in part. The Respondent's request for injunctive relief is denied. The Respondent's request that the Court provide him more notice is granted. The Court will set a hearing on the Order to Show Cause at a future date.

_____
UNITED STATES DISTRICT JUDGE

_____
SENIOR UNITED STATES DISTRICT JUDGE

_____
SENIOR UNITED STATES DISTRICT JUDGE